TOWN OF JAMAICA v. TOWN OF TOWNSHEND.

Where a person, residing in Jamaica, purchased a tract of land in another part of the town, and partly cleared it, and, with the intention of building a house upon the land and residing in it as soon as it should be finished, removed, with his family and all of his effects, except a few articles of furniture of little value, or use, to the town of Londonderry, and resided there twenty nine days, having no intention of again living in the house which he had left in Jamaica, and intending to remain in Londonderry until his house should be finished which he was about building, and then removed again to Jamaica, it was held, that this was a change of domicil and interrupted his gaining a settlement in Jamaica by residence.

APPEAL from an order of removal of Russell Clayton, a pauper, from Jamaica to Townshend, made by two justices of the peace in pursuance of the statute. Plea, that Townshend was not the place of the last legal settlement of the pauper, and trial by jury, April Term, 1846,—WILLIAMS, Ch. J., presiding.

On trial no question was made, but that the settlement of the pauper was in Townshend, unless he gained a settlement in Jamaica, by residence, between January 14, 1832, and March 9, 1840; and it was not denied, that he did gain such settlement in Jamaica, unless his residence there was legally interrupted between March 7, 1834, and April 5, 1834. In reference to this point evidence was

given tending to prove, that prior to March 7, 1834, the pauper resided in Jamaica, and had bargained by parol for the right of occupying, and, on certain conditions, of buying twenty acres of woodland in the town, and that he had cleared, or partly cleared, an acre and a half of the land, and had cut some timber to be used in building a log house upon the land; that on the 7th day of March, 1834, he moved to Londonderry with his wife and family, taking with him all his furniture and implements of housekeeping, except a few small articles of little value, or use; and that he continued to reside in Londonderry, with his family and effects, until the fifth day of the following April, when he again removed to Jamaica. There was conflicting evidence as to the intention of the pauper, at that time, to make Londonderry his permanent home, or to return to Jamaica.

But the court charged the jury, that though the pauper had bargained for the land and managed the same as the evidence tended to prove, and though he had left at his former dwelling in Jamaica the articles mentioned, and though he cut some timber for a log house on said land, and though he intended speedily to build said house and return and live therein, yet, if he moved to Londonderry with his family and effects, as above stated, leaving no shelter, or dwelling, in existence in Jamaica, to which he intended to return, and intending, also, to remain in Londonderry until he built said house, that such a removal would interrupt his residence in Jamaica.

Verdict for plaintiffs. Exceptions by defendants.

*W. C. Bradley* for defendants.

The mere fact of the pauper's moving is not in itself conclusive. All facts of this nature merely go as evidence of intention to abide, or return; and so they have always been considered by the court,— as in relation to going to a place and staying there at school; 2 B. & A. 382; or a residence in any town for a temporary purpose; 3 Greenl. 13; and occasional absence, or going out of town for cure of sickness, or being hindered from returning thereby, does not interrupt gaining a settlement; *Paris* v. *Hiram*, 12 Mass. 265. In *Cambridge* v. *Charlestown*, 13 Mass. 503, the pauper came to the latter town from Vermont, where he had left his wife and children, and labored, with the intention of building and removing his family

Jamaica *v.* Townshend.

so soon as he should have acquired sufficient for that purpose; and it was held, that although, during the period, he visited his family in Vermont two or three weeks, and in one instance five or six months at a time, he gained a settlement on the ground of intention; —and this case is cited with approbation in *Burlington* v. *Calais*, 1 Vt. 385, where the court ruled, that, as the pauper *intended* living at Calais until he could go and find some other place, he was settled there. On the contrary, in *Billerica* v. *Chelmsford*, 10 Mass. 394, where a person left with his family, and admitted it to be *without any intention of returning*, but did come back in three months, it was held, that he gained no settlement. SEWELL, J., appropriately observed, that " where the change of place had been for the short period of three months in a period of ten years, (here it was twenty nine days in seven years,) it might be a question of fact, and *the result* of evidence, whether there was a change of the party's home, or domicil, or merely an occasional absence from his home." This is precisely what we contend ought to have been left to the jury. A man may have a temporary residence, or a permanent one; he may have a permanent or a temporary home; it depends upon whether he has reached his destination, or intends ultimately to proceed farther. The present case admits the latter intention.

*Keyes* and *Bradley* for plaintiffs.

The case finds the pauper, in March, 1834, with his family and effects, keeping house in Londonderry, without any shelter, or dwelling, any where else, to which he intended to return, but intending to continue where he was, until certain contingencies happened. We conceive that no *merely* mental operation, no mere volition, or plan for the future, can prevent the place so occupied from being his *present home*. To suppose otherwise would be a gross departure from the *ordinary* and popular use of the words *home* and *residence;* and there is quite as little in the etymology of the two words to favor the construction claimed by the defendants. Our construction comports with the obvious policy of the statute. If a man, while living in one town, can, by a mere mental operation, not directed to any particular " shelter, or dwelling," *reside* in another, the duty of overseers would assume a new aspect. Rev. St. 102, § 4.

The opinion of the court was delivered by

REDFIELD, J.   No doubt the question of residence, of domicil, is very much controlled by the *status* of the mind of the dweller, or inhabitant.   But domicil is not a thing resting wholly in *intention.* If it were so, most Americans would be without any fixed domicil. Many of us have, perhaps, high hopes of a happier home, and comfort and plenty in some far off region, where all the necessaries of life grow spontaneously, almost, and where neither idleness, vice or dissipation, will cheat us of comfort and plenty.   But all this effects no present change of domicil ;—that is still the home, whether the removal is intended in twenty-nine days, or as many weeks, or years.   In either case, it may never come.

So, in the present case, there is nothing, which shows that the pauper had not taken up his residence *for the time* (and that is all which is necessary) in Londonderry.   Residence is a *fact.*   Here the fact and the manner of dwelling is conceded; and the court charged the jury, that, in such a case, the intention to build a house and remove into it in the town of Jamaica did not constitute a residence in Jamaica.   Is there any case, where such an *intention* will constitute a *residence ?*   I think not.   When one leaves home, or leaves a former residence, the intention to return, the *animus revertendi*, will often prolong the virtual or legal residence, or domicil, when the actual *commorancy* may be, most of the time, in another place.   Such are those occasional absences, which always occur in visits of business, or pleasure, when one's family attends him.   Nor is it important, whether, during these temporary absences, the family board, or keep house, or whether the absence be for a few weeks, or many months, or years, even,—as occurs in the case of foreign ministers, and members of Congress, sometimes.

But in all these cases there is always some *place*, which the party does, or may justly, call *home*, some local habitation, which has a tangible, palpable existence, out of the mind of the party.   I do not say this is *always* indispensable ; but there must be something more than a mental purpose of return at some indefinite, future time.

Nothing of this kind exists in the present case.   The statute in regard to paupers recognizes but two descriptions of persons, those who have " come to reside" in a town, and " transient persons."

The one class, if they become chargeable, are subject to an order of removal; the other class may be provided for, and the expenses recovered of the town, where the person is *settled*. Can there be any doubt to which class of persons this pauper belonged, while remaining within the limits of Londonderry? How very much stronger is this case, in its facts, than that of *Middlebury* v. *Waltham*, 6 Vt· 200, where the pauper was a hired servant, who had come to Middlebury to labor for no definite time, and after four days, was taken sick and died;—and yet she was considered *resident* and an order of removal necessary, to entitle the town to recover,—the court saying, "that all persons are to be considered either *residents*, or *transient persons;* and perhaps visitors and travellers will comprehend most of the latter description;" "those with families, who remove with them into a town," &c., are residents.

And whether the residence is intended to be absolutely permanent, or not, is not important. The question is, where does he, for the time, dwell? Is he now at home? Where does he reside for the time being? We never think of applying these terms to travellers, visitors, persons staying for education, for health, or for recreation. We all understand, that such persons are *away from home*, that they expect soon to return, or at some time. But in the present case it would seem the pauper never had resided upon the land, for which he had bargained; he had permanently and voluntarily abandoned his former home, without any *animus revertendi*. But, so far as the mind was concerned, he was looking *forward*, instead of *back;* his home in Jamaica, during this interval, was not a *remembrance*, but a *hope*, a *desire*. The mind may prolong a residence; but it will hardly *anticipate* one, as is claimed here.

The question of the actual residence, in our opinion, would not have been very different in principle, if this piece of land had been in some third town. In that case few persons would dispute, that the pauper's residence, during the twenty-nine days, was in Londonderry. If this case were to be opened, it seems to us that it will not do to hold, that the stay in Londonderry is no residence, upon the mere ground of the intention to build a house and go to reside upon this land. If so, then all residences of the same, or similar, character, of whatever duration, must be so considered,— which will be absurd.

Judgment affirmed.