## ELIZA EGLESON v. JOHN BATTLES.

### Bastardy.

A bastard child, born out of the state, its mother, at the time having no domicil within the state, cannot be affiliated, or its maintenance charged upon the father under our statute. See *Graham* v. *Monsergh*, 22 Vt. 543.

But if the mother is, at the time of the birth of the child, *bona fide* an inhabitant of the state, and the birth of the child, by accident, or during a temporary absence, occurs out of the state, the mother may have her remedy under the statute, against the father.

And if there is evidence tending to show the residence of the mother to be in the state, at the time, though the birth of the child occurred out of the state, the evidence should be submitted to the jury on the question of residence.

THIS was a prosecution for bastardy.

The defendant filed a motion to dismiss the complaint, because he says, "That said child was born and begotten in Stanstead, Canada East, and that said complainant, at the time said child was begotten and born, had no residence in this state; and that the defendant never was a resident of this state."

The County Court,—POLAND, J., presiding,—overruled the motion. To which decision the defendant excepted.

At the December Term, 1853, the defendant pleaded *not guilty*, and the cause was tried by jury.

On the trial the evidence of the complainant tended to prove the following facts as to her residence: That complainant is a native of Ireland, and came to this state in the spring of 1848, and lived at service at various places in Derby and Salem, till the spring of 1850, when she went to work for a tailor in Derby, at the village of Derby Line, to learn the tailor's trade; she staid and worked for the said tailor nearly one year, that she then worked at her trade at different places, for a few days at each place, till May, 1851; that she then went to the house of one Mr. Lee, who lived in Stanstead, a few rods over the line.

That when she went to Mr. Lee's, it was for the purpose of sewing for a few days only, and for several weeks her trunk and clothing remained at the house of the tailor where she learned her trade in Derby; but in the course of the summer her trunk and clothing were all removed to Mr. Lee's, and she remained

and worked there till July, 1852. That she then came over the line into Derby, and remained some three or four weeks, and then went to one Mrs. Perry's in Stanstead, for the purpose of lying in, as she could not procure a place in Derby; .it appeared that she staid at Mrs. Perry's about three weeks, when she gave birth to the said bastard child, on the 31st day of August, 1852; that she then returned immediately to Derby, and has since resided in Derby with her child.

The complainant's evidence tended also to prove, that said child was begotten by the defendant about the first of December, 1851, at Mr. Lee's house, while complainant was living there. That the defendant lived in said Stanstead, and worked for and at Mr. Lee's during the season of 1851. The counsel for the complainant also introduced a certificate of the overseer of the poor of the town of Derby, giving notice that said overseer would control and prosecute said complaint, under the statute, for the ·benefit,.and in behalf of the said town of Derby.

The defendant's counsel claimed that the prosecution could not be sustained, even if the jury were satisfied that defendant was the father of the complainant's child; and requested the court so to charge the jury.

But the court declined to charge the jury as requested;· but did charge the jury, that if they found that the defendant was the father of the complainant's bastard child, then they would return a verdict of guilty.

The jury returned a verdict of guilty, and the court thereupon made an order of affiliation.

To the charge of the court, and to the refusal of the court to charge as requested, the defendant excepted.

*J. L. Edwards* and *W. M. Dickerman* for defendant.

It appears from the bill of exceptions that the bastard child was begotten and born in Canada.

That at the time the child was begotten the complainant's residence was in Canada, and it does not appear that her residence was changed previous to the birth of the child.

The plaintiff was temporarily in Derby, a few weeks, but all her things remained at Lee's in Canada, and were not removed to Derby, till after the birth of the child.

The bill of exceptions does not show that she had taken up her residence in Derby, till after she left Mrs. Perry's, nor the purpose for which she was in Derby previous to her going to Mrs. Perry's.

The presumption is that her residence was where she kept her trunk and clothes, and will be taken to be so, in the absence of all proof to the contrary.

The plaintiff's residence being in Canada, at the time the child was begotten and born, the cause of action accrued out of the state, and the case falls within that of *Graham* v. *Monsergh*, 22 Vt. 543.

As is said in that case, " the proceeding is altogether a matter of internal police, and is in its very nature as exclusively local as is the administration of criminal justice." The cause of action then must occur within the jurisdiction of this court, in order that the plaintiff may recover. If the child is born out of the state, the court has no jurisdiction. *Tanner* v. *Allen*, Co. Litt. 25. 1 vol. U. S. Digest 403.

The child was begotten and born out of the state. This is the cause of action. And as is said in the 22 Vt., above cited, " The remedy is a peculiar one, and given and regulated exclusively by statute, and has no fair and reasonable application to causes of action accruing out of the state."

The plaintiff came into the state for the purpose of charging the defendant with the support of the child, and not with the *bona fide* intention of residing here; this is manifest from all the circumstances.

*H. F. Prentiss* and *Peck & Colby* for plaintiff.

I. This cause differs materially from the case of *Graham* v. *Monsergh*, 22 Vt. 543, and comes within the exceptions stated by the learned CHIEF JUSTICE in the last clause of the opinion in that case.

In that case the child was begotten and born out of the state, and neither party ever resided in the state, till the plaintiff came here temporarily for the purpose of making her complaint.

In this case, the plaintiff came here to reside in the spring of 1848, and remained here till May, 1851, living in the village of Derby Line, when she went a few rods north of the line, in the same village, to a Mr. Lee's, " for the purpose of sewing for a few

days only," with the *animus revertendi*. She, however, remained there till July, 1852, when she returned into Vermont. During the time she was at Lee's the child was begotten. She remained here three or four weeks after her return in July, 1852, and failing to procure a place here where she could give birth to her child, she went to a Mrs. Perry's, in the same village, a few rods north of the line, "for the purpose of lying in," with the *animus revertendi*, which she put into practice immediately after the birth of the child, and with her child has resided here ever since.

None of these facts were true in the case cited. Under these circumstances it would seem that the cause of action *accrued here*, that the injury accrued to a citizen of this state, who was *temporarily* abroad only, at the begetting and birth of the child, and all the acts done are to be referred to the *place* of her domicil which was *only* in this state.

II. The expression "same county" in section 1 chap. 71, of the Comp. Stat., must refer to the domicil of the woman at the time of making complaint. The same words are used in section 3, 4 and 5, and if construed to refer to the *place*, or county in which the cause of action happened, then the trial would be strictly *local*, which has never been so held.

The opinion of the court was delivered by

REDFIELD, Ch. J. The case of *Graham* v. *Monsergh*, 22 Vt. 543, fully establishes the rule, that a bastard child, born out of the state, its mother, at the time, having no domicil within the state, cannot be affiliated, or its maintenance charged upon the father, under our statute. We could not probably render this more obvious by any present argument.

It is nevertheless true no doubt, that if the mother is, at the time of the birth, *bona fide* an inhabitant of the state, the birth of the child by accident, or during a temporary absence, occurring out of the state, will not deprive her of remedy, under the statute, against the father.

But the question of residence was not, in the present case, submitted to the jury. And the testimony, as detailed in the bill of exceptions, although not perhaps altogether conclusive, would seem to indicate certainly, that the plaintiff's residence was probably in Canada, at the time of the birth of the child.

There would probably be no question, that her having lived at Lee's, from May, 1851, till July, 1852, and within a few weeks after she first went there, having removed all her effects to that place, that was her residence until July. She then went to Derby and remained " a short time, three or four weeks." But whether she removed her effects to Derby, or not, does not appear. And if she did, whether they remained behind her when she went again to Stanstead, where the child was born, at Mrs. Perry's is not stated.

If she never removed her effects into Derby, after her residence at Lee's, or if they were carried with her to Mrs. Perry's, it would seem very difficult to make out any residence in Derby, after she left Lee's, until after the birth of the child, except while she remained in Derby, unless a mere intention to go there to reside, as soon as she could find a place to live, constitutes a residence. And the case of *Jamaica* v. *Townshend*, 19 Vt. 267, seems to settle that question against the plaintiff. But the facts may be more fully developed on a future trial, and may make a case for the plaintiff, and the present testimony might have entitled her to go to the jury on the question of present residence at the birth of the child.

Judgment reversed, and case remanded.