WILLIAM A. SMITH *v.* MARY A. STANNARD, AND FIRST NATIONAL BANK OF FAIR HAVEN ET AL., TRUSTEE.

January Term, 1908.

Present:   ROWELL, C. J.,   TYLER, WATSON, JJ., and WATERMAN, Superior J.

Opinion filed July 27, 1908.

*Taxation—Collection of Taxes—Domicile—Question for Jury— Record—Questions for Review—Necessity of Setting Forth All the Evidence—Recusant Taxpayers—List Made by Doubling—Requisite Procedure—Mode of Assessment—Abstract of Individual Lists—Essentials—Listers' Notice of Meeting to Hear Grievances—Required Formalities—Notice by Town Treasurer—Essentials to Validity of His Warrant —Evidence—Admissibility.*

In assumpsit for taxes, whether at a certain time defendant was domiciled in the town in this State where she was taxed, or in a town of another state, *held* for the jury.

In assumpsit for taxes, where it does not appear that the bill of exceptions discloses all the evidence bearing on the character of defendant's removal from the town where she was taxed, and

in which she was domiciled at a certain time, and no part of the transcript of the evidence on that question is before the Supreme Court, it cannot say, as matter of law on the record before it, that defendant's removal constituted a change of domicile.

The requirements of P. S. 565, regarding the abstract of the individual list of taxpayers to be filed by the listers with the town clerk, are the same whether an individual list is based on the taxpayer's inventory, or is made up by the listers, under P. S. 561, because of the taxpayer's wilful omission to return an inventory.

P. S. 565 does not require that the abstract of the list of a recusant taxpayer, which has been made up by the listers under P. S. 561, because of her wilful omission to return an inventory, shall recite in detail the actions of the listers in so making up the list; but an abstract showing severally the appraisal of the recusant taxpayer's different pieces of real property, also of her personal estate, and that such appraisals, doubled for failure to return an inventory, were taken in the aggregate as her total real and personal estate, is sufficient.

P. S. 503, specifying to whom and where taxable real estate shall be set in the list, P. S. 510, containing like provisions as to personal estate, and P. S. 571, declaring the required particulars of the completed grand list, are as applicable where a taxpayer's list is made up by the listers pursuant to P. S. 561 because of wilful omission to return an inventory, as where the list is based on an inventory properly returned; and the completed grand list of a taxpayer who has wilfully omitted to return an inventory need not recite in detail the action of the listers in making it.

Since neither the abstract of the individual list of a taxpayer required by P. S. 565 to be lodged by the listers with the town clerk, nor the completed grand list provided for by P. S. 571, are required to show the different steps taken by the listers in making up the list of a recusant taxpayer pursuant to P. S. 561, those steps may be shown by parol evidence.

P. S. 555 providing that real estate in the last quadrennial appraisal, taxable to a person filing a proper inventory, shall be appraised by the listers at the valuation established in such appraisal, and requiring additions or deductions in circumstances therein indicated, and P. S. 556, providing that, if any real estate taxable to such person was omitted from the last quadrennial appraisal, the

listers shall appraise the same at its value in money, subject to the rules directing the quadrennial appraisal of real estate, apply only to real estate "taxable to a person duly filling out, swearing to and returning an inventory"; and the listers in making up the list of a person who has wilfully omitted to return an inventory are not authorized to take the valuation of the recusant taxpayer's real estate as established in the last quadrennial appraisal, but must themselves appraise it.

P. S. 566, requiring notice of the place of hearing by listers of persons aggrieved by their appraisal or by any of their acts to be posted in the town clerk's office and in two other public places on or before the 25th day of April, is mandatory, and compliance therewith is essential to the validity of a grand list; and hence, in assumpsit for taxes, there being no evidence, as to two of the notices, tending to show that they had been seasonably posted, and no evidence tending to show that any of the notices posted stated the place of hearing, it was error to receive the grand list in evidence, and error to deny defendant's motion for a directed verdict for that there was no evidence that the required notices were properly and seasonably posted.

Compliance with P. S. 620, requiring a town treasurer on receipt of a tax bill to post notices in at least three public places, and to publish the same for one week in the public newspapers of the town, "calling upon the taxpayers to pay their respective taxes within ninety days from the date of such notices," is a prerequisite to such treasurer's authority to issue his warrant under P. S. 621, providing that at the expiration of such ninety days the treasurer shall issue his warrant against delinquent taxpayers for the amount of taxes remaining unpaid, and deliver the same to the collector of taxes; and hence, in assumpsit for taxes, where it did not appear when the treasurer's notice published in a newspaper was dated, or published, or what were its contents, and there was no evidence tending to show when the posted notices were posted, or what were their contents, and there was no other evidence tending to show either actual or constructive notice of the assessment of the tax in question, or of the time and place when and where payable, it was error to receive the treasurer's warrant in evidence.

ASSUMPSIT by trustee process for the collection of taxes assessed against the defendant in the town of Fair Haven on

the grand list of the year 1902. Plea, the general issue. Trial by jury at the September Term, 1904, Rutland County, *Munson, J.,* presiding. At the close of all the evidence defendant moved for a directed verdict on the grounds recited in the opinion. Motion denied, to which the defendant excepted. Verdict and judgment for the plaintiff. The defendant excepted.

The plaintiff's evidence tended to show that Heman Stannard, a brother of the defendant, deceased June 16, 1901; that prior to his decease he had spent a part of every year for seven or eight years in Fair Haven during the time from May or June until February or March following; that when he was there his sister, the defendant, a single woman about eighty years of age, was frequently seen there with him; and that after his decease she remained there till March 17, 1902, when she left Fair Haven and never returned.

The exceptions state that "as to the tendency of the evidence concerning the character and continuance of her abode with her brother, and of his residence at Fair Haven, the reporter's transcript of the testimony of the following witnesses is referred to and shall control," giving the names of the particular witnesses. In addition to what has already been stated respecting the evidence, the testimony of these witnesses tended to show that the brother, who was a widower, owned two dwelling-houses concurrently till the fall of 1900, one at Hampton, N. Y., which he sold that fall, and one on River street in the village of Fair Haven, this State, which he deeded to his daughter, Mary E. Stannard, who lived with him, about two weeks before his death; that when owning both places he stayed at each a portion of every year for some years prior to his decease; that after selling the one at Hampton he stayed at the one in Fair Haven and was taken ill there in the fall of 1900, his illness continuing till his death; that previous to the year 1895, and ever after, the defendant's sister, Mrs. Kirkland, owned a house in Granville, N. Y., in which she resided; that in the spring of 1895 the defendant, having been living with her brother at Hampton, went from there to her sister's house in Granville, taking her trunk with her, from which time forward as long as the brother lived and longer, she had two rooms there set apart, furnished either by herself or her sister, for her occupancy and therein her trunk and things were continually kept; that during

the same time these rooms were occupied by no one else, except that when she was away her niece, Miss Kirkland, slept in one of them sometimes, perhaps once or twice in a summer, when necessary because she had company and was short of room; that when there the defendant did not board, but did pay in part the expense of the household: she bought things for the family, and so did her sister, Mrs. Kirkland, each as she thought was right, and the defendant called that her home; that during the seven or eight years before mentioned, the defendant lived with her brother in the house on River street in Fair Haven as his housekeeper whenever he was there,—they closed the house and went away together each year in February or March and returned together in May or June following, except that in the spring of 1901, she went away and returned as usual, but he being ill did not go; that she was never in any of those years at Fair Haven on the first day of April; that when thus acting as housekeeper for him she sometimes bought milk tickets and paid for them, also groceries, but as to whose money was used by her for such purposes there was no evidence; that she assisted some of the time in caring for her brother during his illness; that the furniture in the house before and at the time of the brother's death belonged to his son who predeceased his father,—no part of it was owned by the defendant; and that after the brother's death the defendant remained there with her niece, Mary E., the owner of the house, without any arrangement therefor, until the 17th day of the next March when she went to the house of her sister, Mrs. Kirkland, in Granville, N. Y., taking with her all the personal effects which she had there, being a valise and some things she needed to wear.

The exceptions state that the defendant was at Mrs. Kirkland's in Granville at intervals when not at her brother's in Fair Haven; and she remained there continuously from and after the time she left Fair Haven, March 17, 1902, as before stated.

The plaintiff also introduced evidence showing, and defendant conceded, that she testified among other things in giving her deposition to be used in this case, that her residence was in the town of Granville, N. Y., and had been since 1895; that she had considerable property for several years during that time, mortgages and the like, since 1898; that at no time had she paid

any taxes in the town of Granville or elsewhere since 1895, but had paid a tax every year they asked her. It was conceded that the population of Fair Haven, April 1, 1902, exceeded 2,500, and did not exceed 3,000.

*William B. C. Stickney,* and *John G. Sargent* for the defendant.

Defendant's domicile was in Granville, N. Y., on April 1, 1902.

"Where a person has actually moved from his original domicile to another place with the intention of remaining there indefinitely and as a place of fixed abode the latter place is regarded as a domicile of choice." Story Conflict of Laws, §46; *Anderson* v. *Anderson,* 42 Vt. 352; *Mann* v. *Clark,* 33 Vt. 55. Where acts, although unaccompanied by declarations, concur with long continued residence or habitancy, evincing an intention of permanent residence, it is manifest that they furnish as satisfactory evidence of that intention as the express declarations of the party to that effect. So it is laid down by Judge Story that even where a party has two residences at different seasons of the year, that will be his established domicile which he himself selects, or describes, or deems to be his home, or which appears to be the center of his affairs, or where he votes and exercises the rights and duties of a citizen. *Hairston* v. *Hairston,* 27 Miss. 704, 6 Am. Dec. 630; *Whitney* v. *Sherborn,* 12 Allen 111; *Wilbraham* v. *Ludlow,* 99 Mass. 587. Where a person lives is taken prima facie to be his domicile, until other facts establish the contrary. *Ennis* v. *Smith,* 14 How. 422; *Bradstreet* v. *Bradstreet,* 7 Mackey 229, 240; *Guier* v. *Daniel,* 1 Binney 349; *Barton* v. *Irasburg,* 33 Vt. 159.

The requirements of the statute as to the making up her list, and notifying her of the assessment of the tax against her, and the place to hear grievances, are not shown to have been fulfilled. The evidence of the listers as to how the defendant's list was made up was improperly received. *Bartlett* v. *Wilson,* 59 Vt. 23; *Weatherhead* v. *Town of Guilford,* 62 Vt. 327; *Walker* v. *Burlington,* 56 Vt. 131.

*Butler & Moloney, F. S. Platt,* and *F. D. Raymond* for the plaintiff.

It is a question of fact for the jury whether a person removing from one town to another intends to change his residence. *Fitchburg* v. *Winchendon*, 4 Cush. 190; *Hartford* v. *Champion*, 20 Atl. 472. A domicile being once fixed, will continue, notwithstanding the absence of the party, until there is a substitution of another. *Jennison* v. *Hapgood*, 10 Pick. 98; *Berry* v. *Wilcox*, 48 Am. St. Rep. 175; *Ballard* v. *Puliston*, 36 So. 951; *Re Mar's Est.*, 69 N. E. 905. Domicile is not destroyed by leaving a state intending never to return, until another domicile is acquired in another place. *Ayer* v. *Weeks*, 65 N. H. 248; *Cobb* v. *Rice*, 130 Mass. 234; *Nugent* v. *Bates*, 51 Iowa 79; Cooley on Taxation, 641-643, (3rd Ed.)

Where some evidence is offered tending to show that a delinquent tax notice was duly posted in four public places, as required by law, such evidence is conclusive when approved by the trial court. *Ireland* v. *George*, 41 Kan. 751; *Hart* v. *Smith*, 44 Wis. 213; 27 Am. & Eng. Enc. 728.

WATSON, J.    At the close of the evidence the defendant moved that a verdict be directed in her favor on the grounds that (1) there is no evidence on the part of the plaintiff tending to show such an appraisal of the defendant's taxable property as the law requires; (2) there is no evidence tending to show notice to the defendant that the listers in reference to her list have taken the steps which the law requires; (3) there is no evidence that a notice to the defendant, she having removed from Fair Haven and not being there, was given to her by the treasurer of the town within the time required by law, before he issued a warrant for the collection of the tax; (4) the evidence has no tendency to show that on the first day of April, 1902, the defendant was a resident of Fair Haven, so that the listers were justified in making up a list as they did; and (5) there is no evidence of a seasonable lodging in the town clerk's office of an abstract of individual lists, and that notices of the time and place of hearing persons aggrieved by an action of the listers were posted in the town clerk's office and other places required by law within the time the law requires. The motion was overruled, to which the defendent excepted.

For the tendency of the evidence concerning the character and continuance of defendant's abode with her brother, and of

his residence at Fair Haven, the reporter's transcript of the testimony of certain witnesses is referred to and is to control. The brother died June 16, 1901, consequently her abode with him, and his residence wherever it was, ceased at that time, and our consideration of the testimony to which reference is thus made is limited accordingly. As the case stood on the evidence, whether the defendant's 'domicile was at Granville, N. Y., or at Fair Haven, this State, at the time of her brother's death was clearly a question of fact for the jury. *Jamaica* v. *Townshend,* 19 Vt. 267; *Mann* v. *Clark,* 33 Vt. 55; *Hurlbut* v. *Green,* 42 Vt. 316; *Anderson* v. *Estate of Anderson,* 42 Vt. 350, 1 Am. Rep.; *Fulham* v. *Howe,* 60 Vt. 351, 14 Atl. 652. The verdict shows that the jury must have found it to be at Fair Haven, and the exceptions state that after her brother's decease the defendant remained there until March 17, 1902, a period of nine months, when she left there and never returned. It does not appear that all the evidence bearing on the question of her removal at that time is shown by the bill of exceptions, and as before seen no part of the transcript of the testimony is before us thereon. We cannot say therefore as a matter of law on the record before us that she made such a removal from Fair Haven to Granville as to constitute a change of her domicile to the latter place before the first day of April following, and consequently in overruling the fourth ground of the motion error does not appear.

It follows that the defendant's standing on the record is that of a resident taxpayer, and the other questions presented must be determined accordingly.

Parol evidence given by two of the listers was admitted subject to exception showing in what manner the listers made up the defendant's list in question: that the defendant not filling out an inventory as required by law, they "ascertained by means of reports of offsets claimed by other taxpayers in their inventories, reports of sundry persons in answer to inquiries of the listers themselves, and reports of sundry persons in answer to inquiries of Mr. Raymond, acting as attorney for the listers, that the defendant had debts due her to the amount of $33,740; that she had live stock on a farm in Fair Haven which the listers appraised at $650; and that she had real estate in that town standing in her name which stood on the quadrennial valuation of real estate for 1898 at $11,850; that the listers then added

together these three items including "the amount at which the real estate standing in her name stood in the quadrennial valuation of 1898 without any appraisal of its value by themselves," the amount so obtained being $46,240, which amount they doubled making $92,480. No assessment was made, and there was no poll. In these circumstances the statute provides that one per cent. of the amount obtained by doubling shall constitute the person's grand list. P. S. 561. It is argued that the action of the listers in making up the list of a recusant taxpayer must be shown by the abstract of the individual lists required by law to be lodged in the town clerk's office for the inspection of taxpayers, and by the completed grand list. We do not think however that this need be shown by either. The requirements of the statute (P. S. 565) regarding such abstract are the same whether the list of a taxpayer be based on an inventory, or be made up by the listers according to the provisions of law (P. S. 561) because of wilful omission to return an inventory. It has been held that the abstract need not contain a schedule of all the estate appraised as belonging to the taxpayer, with the sum at which each article is appraised. *Taylor* v. *Moore*, 63 Vt. 60, 21 Atl. 919. On the reasoning of that case it is clear that it need not contain in detail the action of the listers in making up the list of a recusant taxpayer. The purpose intended, as there declared by the court, namely, to have deposited in an accessible place information from which every taxable inhabitant can ascertain, at least, the amount of his list derived from his estate or property, and also the amount set to him, as compared with the several amounts derived from such property set to other taxable inhabitants of the town, is served without such detail. The abstract in question shows severally the appraisal of the defendant's different pieces of real estate, also of her personal property, and that such appraisals doubled were taken in the aggregate as her total real and personal estate. Nothing more is required by the law in this respect.

It is further said that the law relating to the doubling process does not contemplate doubling each item going into the list to make up the full amount of the taxpayer's personal property, not does it contemplate any classification into real and personal property, or distribution of property on account of its location. But herein the law of such procedure should be construed

with reference to the statute specifying to whom, and where in respect to municipal and *quasi*-municipal corporations, taxable real estate and personal property shall be set in the list (P. S. 503, 510); also with reference to the required particulars of the completed grand list. P. S. 571. The law of these sections is applicable whether the list of a particular taxpayer be based upon an inventory by him properly made out and returned, or be made up by the listers under the statute. By the section last cited, where there is no poll and no deductions, as in the case before us, the completed list shall contain the quantity of real estate owned by the taxable person, specifying the class to which it belongs and the village, school and fire district in which it is situated; the value of the person's personal estate; and one per cent. of the value of such real and personal estate shall be his grand list for the assessment of taxes. Like the abstract, the completed list is not required to show the different steps taken by the listers in making the list of a recusant taxpayer. And it being a matter not necessary to be shown by either, we have no doubt that the parol evidence was properly received for that purpose.

It is said that the items of real estate were transferred directly from the quadrennial appraisal without consideration by the listers and that this procedure was unwarranted by law. By P. S. 555, "The real estate in the last quadrennial appraisal, taxable to a person duly filling out, swearing to and returning an inventory, shall be appraised by the listers at the valuation established in such appraisal"; and then additions or deductions may be made in circumstances mentioned therein. By section 556, "If any real estate taxable to such person was omitted from the last quadrennial appraisal, the listers shall appraise the same at its value in money, subject to the rules directing the quadrennial appraisal of real estate." It will be noticed that the law of these two sections by express terms applies only to real estate "taxable to a person duly filling out, swearing to and returning an inventory." It has no application when the real estate is taxable to a person who wilfully omits to return such an inventory. Then the listers are required to ascertain as best they can the amount of taxable property of the person without regard to character, appraise the same including the real estate at its value in money and double the amount so obtained. See

*Bartlett* v. *Wilson,* 60 Vt. 644, 15 Atl. 317; *Rowell* v. *Horton,* 58 Vt. 1, 3 Atl. 906; *Howes* v. *Bassett,* 56 Vt. 141. It is urged by the plaintiff that in *Bartlett* v. *Wilson* a like action by the listers in taking a former appraisal of the real estate of the recusant taxpayer was sanctioned. True there the real estate was taken at its appraisal the preceding year, and that item and the amount of the assessment for money and debts due were doubled for the person's grand list. Yet the question of the right to take such appraisal was not raised. The opinion states that "no question was made upon trial as to the proceedings of the listers save the doubling of the appraised value of the real estate."

In the case at bar, as before seen, it appears that the listers, in making up the defendant's list, instead of appraising the real estate themselves, took the valuation established in the last quadrennial appraisal. This was unauthorized in law, and the list when made up was not their judicial determination arrived at in the way pointed out by statute. Consequently the grand list of the defendant to the extent of the real estate is illegal; but whether her whole list was thereby rendered invalid it is unnecessary now to consider (see P. S. 606), since our holdings on certain other questions require a reversal of the judgment.

It is also contended that the item of debts due the defendant is simply an arbitrary assessment by the listers, that is, there are no choses in action shown as appraised. This question we do not decide.

The statute provides that on the first Tuesday in May the listers shall meet at some place to be appointed by them and shall on that day, and from day to day thereafter, hear persons aggrieved by their appraisal or by any of their acts, until all applications are heard and decided and the list corrected accordingly. Notice of the place of hearing shall be posted in the town clerk's office and in two other public places in the town on or before the 25th day of April. P. S. 566. It appeared that at some time one of the listers posted in the town clerk's office, in the postoffice, and in the Hotel Rutledge, all public places in Fair Haven, notices with regard to a meeting of the board of listers to hear grievances, and that the meeting was held May 16, at the town clerk's office. The evidence tended to show that the notice was posted in the postoffice within the time required

by law, but there was no evidence as to the time when the notices were posted in the other two places, nor tending to show that any of the notices posted stated the *place* of hearing. The law particularly specifies that ''notice of the place of hearing'' shall be so given.

On May 7, 1902, the listers left a written notice, signed by them and addressed to the defendant, under the outside door in the ell part of the house on River street in Fair Haven from which she had departed March 17, 1902, of the fact that they had made up a list against the defendant, and how, and the amount thereof after doubling, also of a meeting to be held by the listers at the town clerk's office in Fair Haven, May 16, 1902, at 2 o'clock P. M. to hear persons aggrieved by their appraisal or by any of their acts. But there was no evidence tending to show that this notice, or any information concerning it, ever came to the defendant's knowledge. Whatever the effect might have been had she received this notice, or had knowledge thereof, in season to appear and be heard before the listers at the time and place named, as the case stands any shortage in the notices of such meeting required by law to be posted was not aided thereby. The statute regarding the posting of such notices is mandatory, and a compliance with its provisions is essential to the validity of the list. There being no evidence tending to show such compliance it was error to receive the grand list in evidence, and the defendant's motion for a verdict should have been granted on the fifth ground stated therein.

No question is made but that a vote previously taken by the town of Fair Haven to collect its taxes by its treasurer was in force throughout the year 1902. The plaintiff's evidence tended to show that the tax book was received by the treasurer from the selectmen July 10, 1902; that the treasurer published in the ''Fair Haven Era'' for three weeks a notice ''that the tax books had been placed in his hands for collection.'' Further than this, as to when the notice was dated, or published, or what were its contents, there was no evidence. The evidence further tended to show that the treasurer posted some notices in the First National Bank, the Allen National Bank, and F. H. Shepard's store, all public places in Fair Haven; but there was no evidence tending to show the dates when these notices were posted, nor anything as to their contents, nor what they referred to; nor

was there any evidence, further than above mentioned, tending to show either actual or constructive notice to the defendant of the assessment of the tax sued for against her, or of the time and place when and where payable.  On receipt of the tax bills it was the duty of the treasurer by statute to post notices in at least three public places and publish the same for one week in the public newspapers of the town, if any were there published, "calling upon the taxpayers to pay their respective taxes within ninety days from the date of said notices," and at the expiration of such ninety days to issue his warrant against the delinquent taxpayers for the amount of all their taxes payable to him, returnable in sixty days from the date thereof, and deliver the same to the collector of the town.  V. S. 481, 482.  A compliance with the provisions of the statute in these respects was prerequisite to the treasurer's authority to issue his warrant against the defendant, as a delinquent taxpayer, and proof thereof is essential to the plaintiff's right of recovery.  Since as before seen the evidence did not tend to show such compliance, the receipt of the treasurer's warrant in evidence was error.

*Judgment reversed and cause remanded.*