**Audrey J. Miller v. John E. Willimott**

[193 A.2d 917]

May Term, 1963

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed July 1, 1963

*Arthur A. Heald* for the plaintiff.

*Joseph S. Wool* for the defendant.

**Smith, J.** This is a bastardy action brought under the statute (15 V.S.A. §331) by virtue of which Audrey Miller seeks to procure an order of filiation against John E. Willimott for the support and education of an illegitimate child, born to the plaintiff, and of which child the defendant is alleged to be the father.

Proceedings were commenced in a justice court of Chittenden County on May 19, 1961. Under the statutory provisions, the cause was then transferred to the Chittenden County Court. On October 2, 1961, the motion of the defendant to dismiss the cause because of lack of jurisdiction was granted by the County Court. Plaintiff has brought her appeal here from the action of the County Court in granting the motion to dismiss.

The factual situation, set forth in the findings of fact made by the lower court, are undisputed. The defendant is a resident of Burlington, Vt., located in Chittenden County. The plaintiff, prior to April 13, 1961, resided in the state of New York. Her contention is that on or about February 28, 1960 she became pregnant as the result of intercourse with the defendant in the city of Albany, state of New York. This pregnancy terminated with the birth of a female child to the plaintiff on November 21, 1960, in the city of Plattsburgh, N. Y. The plaintiff came to Burlington, Vt. to reside on April 13, 1961, and commenced this action against the defendant on May 19, 1961.

The lower court, in granting the motion to dismiss made by the defendant, stated that it felt it had no alternative but to do so under prior decisions of this court relative to the jurisdiction of bastardy complaints, although the court expressed its reluctance to follow the rules of law expressed in this Court's prior decisions on the matter.

The decisions of this Court inferentially referred to in the findings of fact below, and expressly set forth in the briefs of both plaintiff and defendant, are two in number and were handed down in opinions written well over a century ago. The first, and leading case, is *Graham* v. *Monsergh*, 22 Vt. 543, decided in the October Term of 1850. The second case, affirming the decision in the Graham case, is *Egleson* v. *Battles*, 26 Vt. 548, and was decided at the April Term, 1854. The jurisdictional question decided in the Graham case has not again been presented to this Court, until the bringing of the instant appeal, since these early decisions. It is the contention of the defendant that we are bound by the rule of *stare decisis* as a result of the cases above cited in deciding the present question before us.

We first turn our attention to the factual situation, as it existed in the Graham case, as contrasted with that presented in the case at hand. At the time the complaint was brought in the Graham case neither the complainant, nor the defendant, nor the bastard child were "citizens, inhabitants or residents of the county of Orleans (the county where the complaint was brought) or of the State of Vermont." The Court at that time stated: "admitted on the record are, that the child, which is confessedly not legitimate, was begotten and born out of the state, and the parties never resided in the state, the mother being only temporarily here at the time the proceedings were instituted."

The only factual similarity between the case now before us and the Graham case is that the illegitimate child was, in both instances, conceived and born outside the State of Vermont. Contrary to the factual situation in the Graham case, we have a defendant who is, and has been a resident of Chittenden County (the county in which the complaint before us was brought) as well as a plaintiff who had resided in the same county for more than a month before the bringing of her complaint. While the record before us is blank as to the present whereabouts of the illegitimate child, the settlement of such child by statute (33 V.S.A. §743) is that of the mother.

Now turning our attention to the applicable statute before this Court of a century ago, as contrasted to the one we now must consider, we find that they differ in content and meaning.

In effect at the time of the Graham decision was R. S. 67 Sec. 1, which we quote in its entirety:

"When any single woman shall be delivered of a bastard child, or shall declare herself to be with child, and that such child, if

born alive will be a bastard, and shall, in either case, charge any person in writing and under oath, before any justice of the same county, with having gotten her with child, and being the father of such child; such justice, on application made by such woman, shall issue his warrant and cause such person to be apprehended and brought before such justice, or any other justice of the same county; which warrant shall run into any county within the state, and be executed by any person to whom the same shall be directed."

The opinion of the Court, in construing the above statute was: "that a proceeding for the purpose of affiliating a bastard child, and compelling aid from the father in its support, is, in its nature confined to causes of action accruing within the state. The remedy is a peculiar one, and given and regulated exclusively by statute, and it has no fair or reasonable application to causes of action accruing out of the state."

Later, in the same opinion, the Court, as then constituted, stated its view of the nature of such bastardy proceedings: "The truth is, the proceeding is altogether a matter of internal police, and in its very nature as exclusively local as is the administration of criminal justice." This expression of opinion, being in the nature of a philosophical observation, and being unnecessary to the decision of the statutory question presented, we regard as being dictum only.

Under the wording of R. S. 67 Sec. 1, the action for filiation could only be brought before a justice of the "same county" in which the plaintiff resided and in which she had become pregnant, or had been delivered of the child, as well as being the "same county" where resided the person sought to be charged with the support of the child. If the applicable statute of today, 15 V.S.A. §331, was the same in meaning and intent as was R. S. 67 Sec. 1, the statute of yesterday, it is possible that we might be bound by the Graham decision and affirm the dismissal below. Such, however, is not the fact, as we shall see by a consideration of 15 V.S.A. §331.

"When a single woman is delivered of a bastard child, or declares herself to be with child, which will be a bastard, if born alive, and charges a person in writing and under oath, before a justice or a municipal judge of the county in which she resides, with having begotten such child, on application made by such woman, such magistrate shall issue his warrant and cause such person to be apprehended and brought before him or another such

magistrate of the same county, which warrant shall run into any county in the state, and may be executed by any person to whom the same is lawfully directed." 15 V.S.A. §331.

■ The vital change relative to the jurisdictional question between the two statutes is that jurisdiction of a bastardy matter is now conferred upon a magistrate of the county "in which she resides," with the "she" referred to, of course, being the plaintiff in such action. No other residential jurisdiction is required by the existing statute, which first appeared in its present form in V. S. 2709, in 1894, some years after the Graham and Egleson cases were handed down. When the defendant, as in this case, is served with process in Vermont, the Vermont court has complete jurisdiction of the matter. There no longer exists the necessity that either the conception, or the birth of the child, should have taken place in the county where the complaint is sought to be brought, or that the parties, or any of them, should have resided in the county or state at the time of the happening of such events.. The jurisdictional requirement is only that the plaintiff be residing in Vermont in the county where the complaint is brought at the time of bringing it.

■ We are mindful of the fact that the change in the applicable statute was first made by the revision of the statutes in 1894. Our rule is that changes in a revision will not be regarded as altering the law, when it was well settled by plain language in the original statute, or by judicial construction, unless it was clear that such was the intention.

However, we think that the change made in the revision of 1894, resulting in V.S. 2709 was a substantive change in the statute as set forth in R. S. 67 Sec. 1, and not one of law. The action of the legislature in approving the revision of 1894 satisfies us that it was the clear intention of the legislature to change the statute touching this subject matter from the original to its present form. *Cuthbertson* v. *Ritchie,* 99 Vt. 50, 54, 130 Atl. 756.

The legislative intent that the provisions of V. S. were to be construed as an extension of existing laws only if the new enactment was the same as the pre-existing law is made evident in V. S. §5460:

"The provisions of Vermont Statutes, so far as they are the same as those of existing laws, shall be construed as a continuation of such law, and not as new enactments."

■ The statute of 1850 is not the statute of today, and the jurisdictional requirements of R. S. 67 Sec. 1 have been modified and changed by the legislative. intent expressed in the different wording of 15 V.S.A. §331. *Stare decisis* is applicable only when the rule of law does not conflict with pertinent constitutional or statutory provisions to the contrary. 21 C.J.S. Courts p. 304. *The lower court was in error in granting the motion of the defendant to dismiss the complaint and the entry must be "Reversed and Remanded."*