Barton and wife *v.* Town of Montpelier.

DAVID BARTON AND WIFE *v.* THE TOWN OF MONTPELIER.

*Liability of towns for insufficiency of highways. Notice to select-men of injury by reason of such insufficiency. Adoption of the Winooski turnpike road by towns, and their liability for the insufficiency thereof.*

A town is liable for an injury to a traveller upon one of its highways, which is occasioned by the accumulation of a snow-drift thereon, if, notwithstand-ing the drift, the injury would not have happened, had the travelled path in the highway been kept sufficiently wide and in proper condition; and if it was not in that condition, or of proper width when the accident happened, the fact that sufficient time had not elapsed after the accumulation of the drift to allow of its removal by the town before the accident happened, will not excuse the town from liability.

*Semble,* that a notice given by a husband *alone* to the selectmen of a town, that his wife has been injured in consequence of the insufficiency of a highway, and that he will claim satisfaction of the town for the injury, is a sufficient compliance with the Act of 1855, no. 15, p. 18, which requires notice to be given to the selectmen of the injury and the claim for satisfaction, before an action can be maintained against the town for damages. BARRETT, J.

The town of M., in pursuance of an act of the legislature (Laws of 1851, page 132), voted in 1852, to accept that part of the Winooski turnpike road which lay within the limits of that town, agreeably to said act; and after that time treated that part of the turnpike as one of the town highways, put it in the highway tax bills for repairs, and made all the repairs thereon. In 1851, the toll gates on the turnpike were thrown open by the turnpike company, and after that time the company made no repairs upon the road. In 1853, the whole franchise or stock of the company was sold on execution. *Held,* in an action against the town for an injury to the plaintiff caused in 1856, by the insufficiency of the portion of the old turnpike in that town, that the above circumstances alone were sufficient, as against the town, to show a surrender of the road by the company, and that the town was liable for the injury.

CASE for an injury to the wife of the plaintiff, David Barton, occasioned by an alleged defect in a highway, in the town of Mont-pelier. The case was referred, and the referees reported the fol-lowing facts:

The plaintiffs, on the 3d of February, 1856, were driving in a sleigh on the old Winooski turnpike, in the town of Montpelier, and in the evening, at the place where the Vermont Central Rail-road track crosses the turnpike, on Col. E. P. Jewett's farm, the sleigh was overturned, and Mrs. Barton was thereby seriously

injured. At that point, the railroad track crosses the highway on an embankment several feet higher than the natural surface of the highway, which is carried over the embankment nearly at right angles, but, from the location of the surrounding high lands, the snow, instead of being swept from the crossing by the winds, was subject to drift and pile up there. After a fall of snow, the railroad track is cleared by running a snow plough over it, which throws up a heavy ridge of snow on each side of the track.

During the winter of 1855–6, up to the time of the accident, the highway had been kept open for travel at this crossing, by shoveling out these ridges of snow, and cutting them out nearly perpendicularly on the sides, and this opening, so made, was too narrow for the safe accommodation of the travel on the highway, and in this particular, the referees found that the highway, at the time of the accident in question, was insufficient and out of repair. On that day the snow had been blown into the traveled path of the highway, on the north side, so that it lay hard and sloping from near the center of the path to the top of the cut and the old snow on the north side, and the runner of the sleigh rose up on this new and hard drift, which could not at that hour be seen, and the sleigh was thereby turned over, and the injury to Mrs. Barton thus occasioned. The referees also reported that in their opinion, if the old cut for the travel through the ridges of snow on each side of the railroad track had been sufficiently wide for the reasonable safety and accommodation of the ordinary travel on the highway, this accident would not have happened, notwithstanding the drifts made on that day.

David Barton gave notice in writing to one of the selectmen of Montpelier, of this injury to his wife, and that he claimed damages therefor, on the 5th of February, 1856.

It further appeared that in 1848, the Winooski turnpike was taken and appropriated by the Vermont Central Railroad Company, in pursuance of certain provisions in its charter.

In 1851, the gates of the turnpike were raised by the managers of the turnpike company, and have since so remained; and since that time, no repairs have been made on any part of the road by the company. The legislature, in 1851, passed "an act relating to the Winooski Turnpike Company" (see acts of 1851, p. 132),

by which it was provided " that so much of the road of the Winooski Turnpike Company as lies within the limits of the town of Montpelier, may be surrendered to the public by said company, *provided*, that the inhabitants of said town, in regular town meeting, shall vote to accept the same ; and the same being surrendered, said road shall become one of the highways of said town." The town of Montpelier, at their annual March meeting, in 1852, passed the following vote : " Voted to accept that part of the Winooski turnpike road which lies in the limits of Montpelier, agreeably to the act of the legislature passed and approved November 19, 1851." Since this vote, the town of Montpelier have treated that part of the turnpike within its limits, as among the highways of the town, have put it in the highway tax bills for repairs, and have made all the repairs upon it.

In 1853, the whole franchise or stock of the turnpike company was sold at sheriff's sale on an execution in favor of Oramel D. Matthews, against the Winooski Turnpike Company, and was bid off by James R. Langdon, and it did not appear whether, since this sale any officers had been elected by the turnpike corporation or not. There was no proof upon this point ; the records not having been produced. Neither was there any proof of the the surrender of the road, on the extinction of the Winooski Turnpike Company, except such as may be inferred from the facts above set forth.

The defendants claimed before the referees, that the plaintiffs could not recover, for two reasons.

1st. Because the defendants had no legal control over the highway, having assumed its care and repairs gratuitously.

2d. Because the defendants had no sufficient opportunity to remove the drift which was the immediate cause of the plaintiff's injury.

But the referees overruled both these objections, and reported that the plaintiffs should recover one hundred and thirty-seven dollars and fifty cents, with costs.

The county court, at the March Term, 1857—,POLAND, J., presiding,— rendered judgment for the plaintiffs upon the report, to which the defendants excepted.

*Peck & Colby,* for the defendants.

*A. Spaulding* and *H. W. Heaton,* for the plaintiffs.

Barton and wife *v.* Town of Montpelier.

The opinion of the court was delivered by

BARRETT, J.   The referees specifically find that the road, at the point of the accident, was insufficient and out of repair, by reason of the narrowness and the manner in which the ridges of sno v had been cut down and thrown out, for keeping the track open during the winter.   Into this narrow pass the snow had drifted during the day on which the accident happened.   The sleigh was upset by one runner rising upon the drift thus formed.   The immediate cause of the sleigh tipping over was the drift.   The referees do not find that the drift made the road out of repair, nor do they find that the plaintiff was in fault in going on to the drift.   But they do find that if the cut through the ridges had been sufficiently wide for the reasonable safety and accommodation of the ordinary travel on said highway, this accident would not have happened, notwithstanding said drifting on that day.   Laying aside metaphysical and somewhat inappreciable distinctions, it would strike most minds that the culpable fault of the party having the charge of, and responsibility for, the condition of the road, was the procuring cause of the accident.   The practical statement is, if the road had been of a reasonably safe width, the accident would not have happened.   It was not of reasonably safe width, and it did happen.   The appreciable, logical, as well as sensible result is, that the efficient cause of the accident was the defect from lack of reasonable and sufficient width.   We think we must hold that the case shows the injury to have happened through such insufficiency and want of repair, as will render liable the party that is responsible to the public for the condition of the road at this point.

A question is made in the argument as to the sufficiency of the notice, under the requirement of the statute.   It has not been furnished to the court, nor does the case, as made up, present the point.

We understand from what was said about it, that the notice was given by the husband, without his wife joining in giving it.

We can not regard it our duty to require great nicety in respect to the manner in which the purposes of the statute shall be carried out.   The provision is for the benefit of the town, to enable it seasonably to investigate claims for injury, before means of proof shall have disappeared, through lapse of time and failure of life and memory.

Barton and wife *v.* Town of Montpelier.

Whenever a town is substantially notified of the happening of an accident resulting in injury, it would seem to be put in the way of realizing all the benefit that the statute was designed to confer.

The claim in this case, to be sure, rests on the personal injury that the wife sustained, but that claim must be enforced, if at all, by suit, by the procurement of the husband, upon his responsibility and for his benefit. It is his claim, though, to answer the requirements of a purely technical rule, his wife's name must be inserted in the writ. The wife can not assert the claim in her own name and right. And it would seem to admit of more doubt whether a notice given by her, or in her name alone, would be sufficient, than whether the notice given in the name of the *husband* alone is sufficient.

As to the sufficiency of the contents of the notice, we can not decide without having it before us. Any question that might be raised on that subject, seems not to have been regarded as important, inasmuch as no point is made respecting the subject in the defendant's brief.

The more important question is, whether the town is responsible for the damage that has accrued. In other words, was the town bound to keep the road in repair?

The road, at the place of the injury, has long been an open and public highway, but was for many years a part of the Winooski turnpike. If it is now a *town* road, instead of being the road of said Turnpike Co., it is so in virtue of the town's having assumed it by adoption. As to the power of the town to do so, there can, at this time, be no question. The case shows that under the act of 1851, the town took the requisite steps, and, so far as depended on its action, did assume and adopt it as a town road. Since 1852, it has been included in the highway tax bills, and taxes have been regularly expended in its repair. In fact, it has been treated by the town the same as any other town road.

In all respects, the town have proclaimed by its votes and its acts, that the road is in law and in fact, in its charge and control, to every intent and purpose. And during all the time no one has interposed any protest or counter claim.

If, therefore, the incident liability of the town is to be avoided, it must be because the town has been thwarted in the accomplish-

ment of its most obvious purpose of making the road its own, by the undeveloped non-concurrence of the Turnpike Company. It is indeed claimed, in behalf of the defendant, that the attempted adoption by the town could not be effectual to subject it to responsibility for the condition of the road, unless the Turnpike Company have responded to the efforts at adoption made by the town, by a corresponding surrender.

It is probably true that the town could not divest the Turnpike Company of their corporate rights and correlative liability, without the assent of that company.

But we think that, as to the town, the Turnpike Company should be regarded as having surrendered or dedicated the road to the town. The removal of the gates, the ceasing of all care and control of the road, the permitting of the whole franchise and stock to be sold on execution, the remaining silent while the town has been treating the road in all respects as its own, and all this following upon the public vote of the town above referred to, must be treated as acts from which a surrender or dedication should be presumed, until the contrary is affirmatively shown.

We, therefore, hold that the town is liable for the damages sustained by the plaintiffs in this suit.

The judgment of the county court is affirmed.