THEODORE M. ELLIS ET AL *v*. JAMES A. CANNON ET ALS.

February Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 2, 1944.

512

*Arthur L. Graves* for the defendants.

*Witters & Longmoore* for the plaintiffs.

SHERBURNE, J. This is a suit in equity in which the plaintiffs, as owners of land with a dwelling house thereon and abutting upon the westerly side of an alleged public highway or street, known as Fifth Avenue, in the village of St. Johnsbury, allege that on June 21, 1942, the easterly side of said street opposite the plaintiffs' premises was washed out for a long distance and to a great depth and far into the traveled portion thereof, and that the retaining wall on the easterly side of the street which had supported the road surface had been displaced and weakened by the washout, whereby the street became unsafe and dangerous for travel. They further allege that the defendants, as trustees and village manager respectively of the village, although requested, have wilfully and arbitrarily refused and neglected to replace and repair the retaining wall and fill the washout, and make the street passable and safe for travel; that the washout has greatly depreciated the value of the plaintiffs' premises and caused them great damage; and that the washout and dangerous condition have become a public nuisance. They seek a mandatory injunction restraining the defendants from maintaining such public nuisance, and ordering the defendants to forthwith fill the washout, replace and repair the retaining wall, and put the street into a safe and proper condition for travel. The defendants demurred in their answer for reasons later herein mentioned. The demurrer was seasonably brought on for hearing, when it was overruled subject

to exceptions, and the benefit of the demurrer was reserved and saved to the defendants until the final hearing. The cause was then heard upon the merits. The principal issue of fact was whether Fifth Avenue, which had never been laid out as a highway, had become a highway by adoption. The chancellor found that it had, and that the condition of the street resulting from the washout constitutes a public nuisance. The decree orders the defendants to abate the condition found to be a public nuisance by repairing said condition in such manner as to make the street safe for public travel, and to thereafter maintain the street in good and sufficient repair and keep the same safe for public travel. The cause comes here upon defendants' exceptions.

 Here, as in *Smythe* v. *Central Vermont Ry. Co.*, 88 Vt 59, 79, 90 A 901, 909, as a part of the final decree the defendants' demurrer was overruled. As there said: "This had already been done, and although the benefit of the demurrer was reserved until the final hearing, that action did not formally reinstate the demurrer, but only reserved to the defendant the right thereafter to raise and insist upon all the questions made upon the demurrer. In such circumstances the final decree is upon the whole case as finally made up and it is a technical error, which we note in the interest of good practice, to consider the demurrer separately and overrule it again."

In their demurrer the defendants insist that the plaintiffs have not stated in their bill of complaint any case justifying the intervention of a court of equity, and among other things assert that the plaintiffs have a full and adequate remedy at law by virtue of the provisions of Chapter 205 of the Public Laws relative to county road commissioners and relative to the indictment of a town for neglect to repair a highway, and by virtue of mandamus proceedings, if they are entitled to any remedy or relief whatsoever.

  Towns and other municipal corporations created for governmental purposes are not liable to a private action for neglect to keep their highways in repair, unless such liability is expressly imposed by statute. *Moody* v. *Town of Bristol,* 71 Vt 473, 476, 45 A 1038; *Daniels* v. *Hathaway,* 65 Vt 247, 253, 254, 26 A 970, 21 LRA 377; *Bates* v. *Village of Rutland,* 62 Vt 178, 181, 9 LRA 363, 22 Am St Rep 95; *Parker* v. *Village of Rutland,* 56 Vt 224; *Baxter* v. *Winooski Turnpike Co.,* 22 Vt 114, 123, 52 Am Dec 84.

514

If a town or other municipality is not liable to a private action for such neglect, then its agents to whom is intrusted the care of its highways are equally not liable to a private action. *Daniels* v. *Hathaway, supra.*

The village of St. Johnsbury derives its powers from No. 179 of the Acts of 1927. In section 2 it is granted authority to exercise all powers relating to municipal affairs. By section 3 it has authority (a) to levy, assess and collect taxes, in order to carry out its powers, (e) to lay out streets and highways. By section 8 (f) the trustees shall be the governing board of the village. By section 14 (a): "The trustees shall have the power to direct the expenditure of such portion, not being less than three fourths, of the highway taxes assessed upon the polls and ratable estate within the village limits, as the Selectmen of the Town of St. Johnsbury may assign to them; and may have the same power to lay out, alter, maintain and discontinue any street, lane or walk, within the village limits, and appraise and settle the damages therefor, as is given by law to the Selectmen of towns, causing their proceedings to be recorded in the office of the St. Johnsbury Town Clerk, Provided, that any person aggrieved by these proceedings shall have the same opportunity for applying to the courts for redress, as is or may be allowed to those aggrieved with the proceedings of Selectmen in similar cases." Under section 17 it has a village manager, who has the powers and duties specified in Chapter 149 of the Public Laws. To the extent that powers conferred upon the selectmen by general law are given to its trustees they may exercise the same within the village limits. P. L. 3646. The trustees and village manager shall have like power to repair highways under their care, which towns and town officers have. P. L. 4907. And the laws applicable to the inhabitants and officers of towns shall be applicable to the inhabitants and similar officers of the village. P. L. 41.

So far as the remedies by application to the county road commissioners or by indictment, mentioned in Chapter 205 of the Public Laws, are concerned, only towns are mentioned, which by P. L. 41 shall include cities. It is clear that these remedies only apply against towns and cities, except possibly in the case of a village whose charter is like that of the former village of Barre, referred to in *Crockett* v. *Village of Barre,* 66 Vt 269, 29 A 147, which provided that the village should "assume and have all the

duties and responsibilities as to said streets, highways, bridges, walks, alleys, and lanes as the town of Barre now has, and the said town of Barre shall be relieved thereof." The charter of the village of St. Johnsbury does not contain such a provision. In *Town of Bennington* v. *Smith,* 29 Vt 254, a petition for certiorari for the purpose of quashing the proceedings of the county court in establishing a highway in the village of Bennington, where proceedings were first taken before the selectmen of the town, on the ground that the statute incorporating the village had given exclusive jurisdiction of this subject, in the first instance, to the trustees of the village, the charter of the village contained provisions much like those in section 14(a) of the charter of the village of St. Johnsbury. We quote from the opinion:

> "There may be some incongruity in having a concurrent power to lay out and discontinue highways in a village, vested in the selectmen of the town and the trustees of the village. But we think if it had been the purpose of the legislature to deprive the selectmen of the town of all control over the subject, some more specific provisions upon the subject would have been considered necessary.
>
> "As the law now stands there is no provision for compelling the village by indictment to keep their highways in repair, or for maintaining an action against them for losses sustained by reason of defects therein. And there is no provision, upon the construction claimed, for laying highways continuously, part of which lie within the limits of the village and part without.
>
> "We think these matters should be provided for, and the burden of maintaining highways in the village, and liability for damages on account of defects therein, be transferred to the village, before we could feel justified, by mere construction, in depriving the selectmen of the town of all control over the subject."

See also *Landon* v. *Village of Rutland,* 41 Vt 681; *Campbell* v. *Town of Fair Haven,* 54 Vt 336; *Parker* v. *Village of Rutland,*

56 Vt 224; *Bates* v. *Village of Rutland,* 62 Vt 178, 20 A 278, 9 LRA 363, 22 Am St Rep 95; *Mason* v. *Village and Town of St. Albans,* 68 Vt 66, 33 A 1068.

The plaintiffs call attention to P. L. 4870, providing: "A town shall keep in good and sufficient repair at all seasons of the year its highways and bridges, other than those on the state highway system", and insist that this duty is imposed upon the village of St. Johnsbury by the charter provisions which we have mentioned. Because we think that the plaintiffs have failed to make out a case for relief by a suit in equity it seems unwise and unnecessary to decide this question until resort is had to a more appropriate remedy, and we can have the assistance of counsel in construing the provisions of the village charter and the Public Laws in connection with the holdings in the cases last above cited.

If a duty is imposed upon the village of St. Johnsbury, or its proper officers, to maintain and repair its streets and highways, for which it or they are liable to a private action, mandamus will lie, in the absence of another adequate remedy, to compel the performance of this duty, but will not interfere with the discretion of its officers as to the character of the repairs that shall be made. *State ex rel. Robinson* v. *Board of Comrs. of Ohio County,* 82 W Va 724, 97 SE 282; *Borough of Uniontown* v. *Com.,* 34 Pa 293; *Hammar* v. *City of Covington,* 3 Met (Ky) 494; *State ex rel. Cutter* v. *Kamman,* 151 Ind 407, 51 NE 483; *People ex rel. Burke* v. *Mayor and City Council of the City of Bloomington,* 63 Ill 207; *State ex rel. Mobile* v. *Board of Revenue & Road Comrs.,* 180 Ala 489, 61 So 368.

If mandamus affords a plain, speedy and adequate remedy, in the sense that it is as practical and efficient to the ends of justice and its prompt administration as the remedy in equity, equity has no jurisdiction. *Bourke and Higgins* v. *Olcott Water Co.,* 84 Vt 121, 124, 78 A 715, 33 LRANS 1015, Ann Cas 1912 D 108. Unlike that case there are no special circumstances here that warrant equitable relief. There was no occasion, nor application, for a temporary injunction or restraining order. The bill of complaint and subpoena are dated September 11, 1942. There were stated terms of this Court in October, November, January, February and May following, so that the plaintiffs would have encountered no difficulty in obtaining an early hearing of a mandamus proceeding, and a single justice

could have made any proper order in vacation required to bring the cause to issue, hearing and determination at the earliest practicable day. P. L. 2059. Had the plaintiffs applied for a writ of mandamus the matter would probably have been determined long ago.

Because the plaintiffs term the washout a public nuisance avails them nothing. They are seeking to compel the defendants to repair the damage caused by the washout and to put the street back into a safe condition. If the defendants are liable to a private action in this regard, terming the washout a public nuisance does not entitle the paintiffs to equitable relief when mandamus is an adequate remedy.

The plaintiffs suggest that it is doubtful whether this Court by mandamus would have jurisdiction to order the continued maintenance of the street after it has been once repaired, as the chancellor has done. It is significant that the bill of complaint does not ask for continued maintenance. Whether or not the continued maintenance of the street could be ordered by mandamus, such an order would be unwise and unnecessary. The history of the case shows that there is a bona fide dispute as to the liability of the village to repair and maintain this street. If, and when, the village has been found so liable no further trouble can be anticipated. If Fifth Avenue is a public highway the discretion of the trustees to discontinue or relocate it, should proper occasion arise, should not be controlled by injunction or mandamus. Moreover, the order for continued maintenance is not permanent. It can only apply to these defendants during their terms of office.

We hold that the court of chancery is without jurisdiction in the premises. It is unnecessary to consider the other exceptions.

*Decree reversed, and bill of complaint dismissed with costs to the defendants.*