**Richard VILLENEUVE, et al. v. TOWN OF ESSEX**

[713 A.2d 815]

No. 97-093

March 18, 1998. Plaintiff, one of three landowners who petitioned defendant Town of Essex to repair the last one-half mile of a town highway adjoining their land, appeals the superior court's dismissal of the property owners' complaint alleging that the Town had failed to respond to their petition as required under 19 V.S.A. § 971. We reverse the dismissal and remand the matter for further proceedings.

On October 18, 1996, upon receiving the petition for repair of the highway, the Town's Director of Public Works investigated the condition of the road and concluded that it was not in need of repair, except for one location that had been disturbed by plaintiff's development of

his property. Letters to that effect were personally served on the landowners within three days. On October 29, the landowners filed a complaint in superior court stating that the Town had not responded to their petition within the time limits set forth in § 971 and requesting that the county road commissioners examine the road, hold a hearing, and order the Town to make the necessary repairs.

The Town moved to dismiss the complaint, and the court granted the motion following a hearing, ruling that it had no jurisdiction to adjudicate the dispute because the Town had responded to the landowners' petition within seventy-two hours by sending them a letter refusing their request to repair the road. After the court rendered its decision, a county commissioner who attended the hearing informed the court that he had received a letter from the attorney of one of the landowners stating that the dispute should be considered by the road commissioners before being heard in superior court. The court responded that the letter had not been submitted into evidence and thus could not be considered, and that, in any case, dismissal of the complaint filed in superior court was not contrary to jurisdiction being vested with the road commissioners.

On appeal, plaintiff does not dispute that the Town responded by letter to the petition within the seventy-two-hour statutory period; rather, he argues that the superior court did not have subject matter jurisdiction to hear the motion to dismiss because the complaint was pending before the county road commissioners. Further, he contends that § 971 confers upon the road commissioners authority to hear a complaint when the town has refused to make the requested repair, even if the town timely informs the petitioners of its intention not to act.

Under § 971, three citizens may notify town selectmen that a highway or bridge is out of repair.

If the town neglects for seventy-two hours to respond by either denying the allegation or to commence work upon the highway or bridge, or fails to continue the work in good faith . . ., the citizens may file with one of the county road commissioners or the superior court for the county in which the highway or bridge is situated, a written complaint . . . setting forth . . . the nature of the insufficiency.

19 V.S.A. § 971. The parties disagree about whether the statute authorizes the citizens to file a complaint with the county road commissioners in the event that the town denies their allegation within seventy-two hours. The quoted sentence is ungrammatical and nonsensical as written. We can assume only that the Legislature either inadvertently omitted the word "failing" before the infinitive "to commence" or intended to use the word "commencing" instead of "to commence." Plaintiff suggests the former construction, arguing that the statute defines two ways in which the town may *neglect to respond*, by either denying the petition or "failing" to commence repair work. Thus, if the town denies a petition or fails to commence repairs, the statute permits the petitioning citizens to file a complaint. The Town argues, on the other hand, that the statute defines two ways in which the town may *respond* within the statutory time period, by either denying the petition or "commencing" repair work. Under this interpretation, the citizens would be precluded from filing a complaint if the town denied the petition within seventy-two hours.

Upon consideration of the language of § 971 within the context of the entire statutory scheme, we conclude that the superior court erred in dismissing plaintiff's complaint. Under the subchapter entitled "Enforcing Repairs," 19 V.S.A. §§ 970-979, if a town denies a request to

repair a road, the petitioning citizens may file a complaint with either the superior court or one of the county road commissioners, who are appointed by the superior court. See *id.* §§ 970-971. In either case, the complainants give the commissioners a security deposit for the cost of the proceedings under the complaint. See *id.* § 971. After receiving the complaint and deposit, the commissioners are required to examine the highway in question and conduct a hearing on the matter. See *id.* § 972. Following the hearing, the commissioners must file a written report either stating that the highway is not out of repair or ordering the town to make specified repairs. See *id.* §§ 973-974. The report is final and conclusive unless the aggrieved party appeals to the superior court within twenty-one days after the county clerk has filed the report and entered a judgment. See *id.* §§ 974, 976. If the report orders the town to make repairs and the town fails to complete the repairs within the allotted amount of time, the commissioners must appoint an agent to spend sums to make the repairs, and judgment in that amount will be entered against the town. See *id.* § 975.

It is plain from this statutory scheme that although the initial complaint may be filed either with a single county road commissioner or the superior court, the road commissioners consider the complaint in the first instance. If the complaint is filed in the superior court, as opposed to with one of the individual road commissioners, the superior court merely refers it to the county body it appointed, which takes the security deposit, examines the road, holds a hearing, and files a report. Only then, assuming there is an appeal, does the superior court adjudicate the dispute.

Given this statutory scheme, aimed at allowing citizens to obtain county review of a town's decision not to repair a road or bridge, the Town's interpretation of the statute — that citizens are precluded from direct review of a town's decision not to repair a road as long as the town sends a letter within seventy-two hours denying the request for repairs — is neither reasonable nor required by the plain meaning of the statutory language. See *In re R.S. Audley, Inc.*, 151 Vt. 513, 519, 562 A.2d 1046, 1049 (1989) (intent of statute should be gathered from consideration of every part of statute, its subject matter, its effects and consequences, and reason and spirit of law); *In re A.C.*, 144 Vt. 37, 42, 470 A.2d 1191, 1194 (1984) (statute should not be construed so as to render it ineffective or to lead to irrational consequences). We are not persuaded that our construction of the statute will result in an avalanche of meritless claims. The statute itself provides a significant safeguard — citizens filing meritless complaints forfeit their security deposit. See *id.* § 972. Nor are we persuaded that the Town's interpretation of the statute is reasonable because 19 V.S.A. § 991 allows a county grand jury to indict a town for failing to keep its roads or bridges in repair. Assuming that § 991 would provide alternative relief to citizens in plaintiff's position, that statute cannot act as a substitute for a reasonable interpretation of § 971 in the context of its own subchapter.

Nor do we agree with the Town that we can affirm the superior court's order because (1) plaintiff failed to raise the issue of subject matter jurisdiction at the hearing on the Town's motion to dismiss, (2) the complaint was not filed with the road commissioners, and (3) assuming plaintiff is correct that the superior court lacked jurisdiction over the case, the court had the authority to dismiss the matter for that very reason. As noted, plaintiff petitioned Town to repair the highway and Town refused. Plaintiff then had the option of filing a complaint either with one of the road commissioners *or* the superior court. Plaintiff chose the latter course, and properly requested in the complaint

that the *county road commissioners* examine the road, conduct a hearing, and order the Town to make all necessary repairs. The superior court was made aware through both the complaint and the road commissioner's comments at the hearing that plaintiff believed the road commissioners should resolve the merits of the dispute in the first instance. Instead of dismissing the complaint, which was properly filed in the superior court, the court should have directed the road commissioners to address the matter, as required by the statute.

*Reversed and remanded.*

**Amestoy, C.J.,** dissenting. The majority has determined its view of what 19 V.S.A. § 971 should mean, but neither the plain language nor the history of the statute supports the inferred construction. Accordingly, I dissent.

Since the late nineteenth century, Vermont has had in place a statute allowing three citizens or taxpayers to petition town officials for repair of a highway or bridge. In its earliest form, the statute allowed the petitioning citizens to file a written complaint with the county road commissioners "if such town neglects for thirty-six hours thereafter to commence work upon said highway or bridge, or fails to continue such work in good faith and with reasonable dispatch until such highway or bridge is put in good and sufficient repair." 1894 V.S. § 3478. This language remained virtually unchanged for the next one hundred years until the recodification of Title 19 in 1986, when the statute was amended to allow taxpayers to file a written complaint "[i]f the town neglects for *seventy-two* hours *to respond by either denying the allegation or* to commence work upon the highway or bridge, or fails to continue the work in good faith and with reasonable dispatch until the highway or bridge is put in good and sufficient repair." 1985, No. 269 (Adj. Sess.), § 1 (emphasis added to new language).

Apparently, in adding the new language, the Legislature inadvertently left the verb "commence" in its infinitive form rather than changing it to its gerund form so that it would be in agreement with the new sentence. Notwithstanding this grammatical irregularity, the plain meaning of the amended statute — the current version of § 971 — is that citizens may file a written complaint only if, within seventy-two hours of the filing of their petition, the town neither denies the allegations in the petition nor commences repair work on the road or bridge.

The majority asserts that because the subchapter entitled "Enforcing Repairs," 19 V.S.A. §§ 970-979, provides for county review of a town's decision not to repair a road or bridge, it is unreasonable to conclude that the Legislature intended § 971 to place limitations on a citizen's capacity to escalate a road repair complaint into litigation.* While the best answer to the

---

* No one has argued that § 971 would be unconstitutional if it did not provide complaining citizens with a remedy for challenging a town's determination that a road or bridge was not in need of repair. See 17 E. McQuillin, Municipal Corporations § 49.02, at 176 (3d ed. 1993) (right of action against municipal corporation is matter of legislative favor that may be withheld, granted absolutely, or granted on condition; rights of action against municipality, when created by statute prescribing method to be followed in obtaining relief, can be maintained only by bringing case in manner set forth). In any case, as the majority acknowledges, under 19 V.S.A. § 991, a town that fails to repair a highway or bridge may be indicted for neglect by a grand jury and fined.

Further, a plain reading of § 971 would not render the subchapter's statutory scheme superfluous, as the majority suggests; it would still permit complaints seeking county review if towns refused in a timely manner to answer petitions regarding the need to repair roads or

majority's assertion is to examine the language of the statute, see *State v. O'Neill*, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996), it is not difficult to discern why the Legislature amended § 971 to place some restriction on when citizens would have a right to obtain county review of a town's determination that a road or bridge was not in need of repair. The influx of population to Vermont in the 1970's and 1980's increased the request for town services, particularly with respect to the condition of dirt roads, to which many new residents were unaccustomed. The amendment to § 971 continued to require towns to look into and respond to petitions for road repair, but did not compel towns officials to submit to legal proceedings every time a citizen challenged their determination that a road was not in need of repair. The accountability of local officials for performance of official responsibilities may be secured as least as well — and often better — by the electoral process as the judicial process, a fact of which the Legislature was fully cognizant when it amended § 971.

If that is not what the 1986 amendment of § 971 was intended to accomplish, then what was its purpose? Under the statute as it existed for over one hundred years, a complaint could be filed if work was not commenced within a given time. The majority's interpretation of the amended version of § 971 is essentially the same, and thus renders the language added by the 1986 amendment entirely superfluous. I do not believe that the Legislature added the new language to § 971 with no purpose in mind and without intending it to change the substance of the law. See

bridges. Nothing in any of the provisions in the subchapter intimates that the procedures outlined therein apply to complaints alleging that a town erred in concluding that a road or bridge was not in need of repair.

*Payea v. Howard Bank*, 164 Vt. 106, 107, 663 A.2d 937, 938 (1995) (when construing statute, we presume language is inserted advisedly; we will not construe statute in way that renders significant part of it pure surplusage); *Trombley v. Bellows Falls Union High Sch.*, 160 Vt. 101, 104, 624 A.2d 857, 860 (1993) (same).

I recognize that the new language in § 971 was inserted as part of the recodification of Title 19, and that caution is required before determining that changes made pursuant to a statutory revision were intended to alter the substantive meaning of the revised provisions. See *Conn v. Middlebury Union High Sch.*, 162 Vt. 498, 502, 648 A.2d 1385, 1388 (1994); *Town of Cambridge v. Town of Underhill*, 124 Vt. 237, 240, 204 A.2d 155, 157 (1964). Nevertheless, the recodification of Title 19 made numerous substantive changes to the law, see 1985, No. 269 (Adj. Sess.), § 1, and we have not hesitated to find substantive changes when the language or circumstances of a revision made it clear that such changes were intended. See *Miller v. Willimott*, 123 Vt. 448, 452, 193 A.2d 917, 919 (1963) (action of Legislature in approving 1894 revision demonstrated clear intent to change jurisdictional requirements for filing bastardy action). Thus, to the extent that the recodification of Title 19 may be considered a revision of the law, the new language added to § 971 was plainly intended to amend the substantive law of the statute.

This Court's overriding objective is to construe the statute to implement the Legislature's intent. See *Valley Realty & Dev., Inc. v. Town of Hartford*, 165 Vt. 463, 466, 685 A.2d 292, 294 (1996). Because we presume that the Legislature intended the plain, ordinary meaning of the statutory language, it is not appropriate for this Court "to read into a statute something which is not there unless it is *necessary* in order to make the statute effective." *O'Neill*, 165 Vt. at 275, 682

A.2d at 946 (emphasis in original). Yet the majority reads into § 971 its own determination of what the Legislature *should* have done. The interpretation is neither necessary to make the statute effective nor consistent with the statute's plain meaning. I am authorized to state that Justice Dooley joins in this dissent.